IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>ALEXANDER HOLTON, et al.,<br><br>    Defendants / | No. C-04-4933 MMC<br><br>**ORDER GRANTING NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT; DENYING RAPHAELS' MOTION FOR SUMMARY JUDGMENT; VACATING HEARING**<br><br>(Docket Nos. 47, 53) |

    Before the Court are two motions for summary judgment: (1) the motion filed December 14, 2005 by plaintiff Nationwide Mutual Insurance Company ("Nationwide"); and (2) the motion filed December 15, 2005 by defendants Marie Raphael and Ray Raphael (jointly, "the Raphaels"). With respect to Nationwide's motion, defendants John Westoby and Lynn Westoby (jointly, "the Westobys") have filed an opposition, in which the Raphaels, and defendant Alexander Holton ("Holton"), respectively, have joined;[1] Nationwide has filed a reply. With respect to the Raphaels' motion, the Westobys and Holton separately have filed joinders to the motion; Nationwide has filed an opposition; and the Westobys have filed a reply, which the Raphaels and Holton have joined. Having reviewed the papers filed

---

[1] Counterclaimants State Farm Mutual Automobile Insurance Company and State Farm General Insurance Company (jointly, "State Farm") initially filed a joinder in the Westobys' opposition and thereafter, on January 25, 2006, filed a notice of withdrawal of joinder.

in support of and in opposition to the motions, the Court finds the motions appropriate for decision without oral argument, see Civil L.R. 7-1(b), hereby VACATES the January 27, 2006 hearing, and rules as follows.

## BACKGROUND

The instant action was brought by Nationwide to establish its obligations under a personal liability umbrella policy Nationwide issued to Nancy and John P. Dickmeyer ("Nationwide umbrella policy" or "the policy"), with respect to a single-car automobile accident occurring on August 29, 2003, in which Nancy Dickmeyer's son, Holton, was the driver and which resulted in the death of his two passengers, Jamie Westoby and Nicholas Raphael. The Westobys are the parents of Jamie Westoby; the Raphaels are the parents of Nicholas Raphael. The parties dispute whether Holton is an insured under the Nationwide umbrella policy, and further dispute the applicability and enforceability of an exclusion from coverage.

On September 9, 2004, Holton pleaded guilty to two felony counts of violating California Penal Code § 192(c)(3), vehicular manslaughter while intoxicated but without gross negligence. (See Nationwide's Request for Judicial Notice Exs. D and E.) On November 1, 2004, imposition of sentence was suspended and Holton was placed on probation for a period of sixty months. (See id. Ex. E.)

On August 1, 2005, the Westobys filed a wrongful death action against Holton in the California Superior Court for the City and County of San Francisco. (See id. Ex. B.) On August 8, 2005, the Raphaels likewise filed a wrongful death action against Holton in that court. (See id. Ex. A.) In those actions, according to Nationwide, the Westobys and the Raphaels contend that the Nationwide umbrella policy provides liability coverage for the deaths of Jamie Westoby and Nicholas Raphael. (See Compl. ¶¶ 25-26.)

The Nationwide umbrella policy was in effect at the time of the accident.[2] The

---

[2] Nationwide further alleges that Holton was insured under two policies issued by State Farm. (See Compl. ¶ 12.) State Farm has agreed to pay a total of $1,100,000 to the Westobys, and an equal amount to the Raphaels, and has filed a counterclaim against Nationwide seeking equitable contribution. (See Counterclaim ¶¶ 9-14.)

2

Nationwide umbrella policy identifies John P. Dickmeyer and Nancy Dickmeyer (jointly, "the Dickmeyers") as named insureds, and further provides: ""[I]nsured" means you and also . . . any member of your household." (See Borovsky Decl. Ex. C (Nationwide umbrella policy) at 10 (emphases omitted).) The policy defines "member of your household" as follows:

> "[M]ember of your household" means any person whose principal place of residence is the same as yours and who is:
>
> a) related to you by blood or marriage, or
>
> b) your ward or adopted child, or
>
> c) under the age of twenty-one and in your care.

(See id. at 11 (emphases omitted).)

The policy contains an exclusion for "bodily injury, property damage or personal injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured" (hereafter, "penal law exclusion"). (See id. at 13 (emphases omitted)).

Nationwide alleges that Holton is not an insured under the policy because his principal place of residence at the time of the accident was not the Dickmeyers' residence. (See Compl. ¶ 28.) Nationwide further alleges that even if Holton "did qualify as an insured under the Nationwide Umbrella Policy as written, it was never the intent of the parties to that contract to provide coverage for Alexander Holton, and it should be reformed accordingly to reflect the parties['] true intentions and agreement." (See id.) Additionally, Nationwide argues, coverage is barred by reason of the penal law exclusion. (See id.) Nationwide seeks a declaratory judgment that it has no obligation under the Nationwide umbrella policy to indemnify Holton for any damages that may be assessed against him for the deaths of Jamie Westoby and Nicholas Raphael, or to defend him against any lawsuits seeking to hold him liable for those deaths.[3] Nationwide also seeks reformation of the Nationwide umbrella policy to exclude Holton from coverage, in accordance with the intent

---

[3] Additionally, Nationwide seeks a declaratory judgment as to the applicable "retained limit" of the Nationwide umbrella policy, a claim that is not at issue in the instant motions.

3

of the Dickmeyers and Nationwide.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(b), (c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  See id.  The Court may not weigh the evidence.  See id. at 255.  Rather, the nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." See United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing Liberty Lobby, 477 U.S. at 255).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court there is an absence of evidence to support the nonmoving party's case.  See id. at 325.

Where the moving party "bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial." See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986) (holding when plaintiff moves for summary judgment on an issue upon which he bears the burden of proof, "he must establish beyond peradventure all of the essential elements of the claim . . . to warrant judgment in his favor.") (emphasis in original).

1  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e); see also Liberty Lobby, 477 U.S. at 250. The opposing party need not show the issue will be resolved conclusively in its favor. See Liberty Lobby, 477 U.S. at 248-49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. See id.

## DISCUSSION

Nationwide moves for summary judgment on its complaint and on the counterclaim asserted by State Farm, on the ground the penal law exclusion bars any claim under the Nationwide umbrella policy. The Raphaels' motion, which, as noted, the Westobys and Holton have joined, seeks summary judgment on the following issues: (1) that Holton is an insured under the Nationwide umbrella policy because his principal place of residence was the Dickmeyers' home; (2) the policy cannot be reformed to exclude Holton from coverage; and (3) coverage is not barred by the penal law exclusion in the Nationwide umbrella policy. The Court will begin its analysis with the parties' arguments with respect to the penal law exclusion because if said exclusion bars coverage for the accident in question, whether Holton is an insured under the policy is immaterial.

**A. Penal Law Exclusion**

As noted, the penal law exclusion bars coverage for "bodily injury, property damage or personal injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured." (See Borovsky Decl. Ex. C at 4.) Defendants argue that the penal law exclusion is not enforceable because it is not "conspicuous, plain and clear," as required by California Supreme Court case law.

The California Supreme Court has held:

> [T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear. Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the

5

average layperson.

Haynes v. Farmers Ins. Exchange, 32 Cal. 4th 1198, 1204 (2004) (internal quotation and citation omitted). "[C]onspicuousness, consistently with the inherent logic of that concept, refers to how a coverage-limiting provision actually has been positioned and printed within the policy at issue." Id. at 1209. Additionally, even where exclusionary language is conspicuously placed in the policy, "[t]he language itself must be plain and clear," which "means more than the traditional requirement that the contract terms be unambiguous"; "[u]nderstandability is also required." See id. at 1211 (internal quotation and citation omitted). Where "material facts are not disputed, interpretation of the policy presents solely a question of law." See id. at 1204.

### 1. "Conspicuous"

Defendants argue that the penal law exclusion is not conspicuous because it appears "in the middle of a list of 18 exclusions, many of which are esoteric or exotic exclusions which would be unlikely to attract interest from the average insured," "[n]othing is done to distinguish the penal exclusion or to alert the reader to the breadth of its scope," and there is "no prefatory language alerting the reader to the penal law exclusion." (See Raphaels' motion at 12-13.)

The Nationwide umbrella policy begins with a "Definitions" section, which section is followed by a section under the bolded heading, "Coverages." (See Borovsky Decl. Ex. C at 012.) There are three bolded subheadings within the "Coverages" section of the policy: "Personal Liability," "Defense Coverage," and "Exclusions." (See id.) The "Personal Liability" section provides in its entirety: "We will pay on behalf of any insured for ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages because of bodily injury, personal injury or property damage." (See id.) On the same page, under the bolded subheading "Exclusions," the policy sets forth sixteen circumstances under which "th[e] policy does not apply." (See id.) The penal law exclusion is the tenth of the sixteen exclusions. (See id. at 13.)

It is difficult to imagine how Nationwide could have placed its exclusions more

6

prominently within the policy. The exclusions are part of the section of the policy describing the coverage of the policy, in the same type and size as the rest of the text, and the specific exclusions are itemized beginning on the same page as the description of coverage for personal liability. The cases upon which defendants rely all involve exclusions that were placed far less prominently in the policy.

In Haynes, for example, a limitation on liability for "permissive users" of the insured's automobile appeared in a section of the policy entitled "Other Insurance," which was amended later in the policy by an endorsement; the Court held that placing the limitation in a section titled "Other Insurance" was not conspicuous because there was "nothing in the heading to alert a reader that it limits permissive user coverage, nor anything in the section to attract a reader's attention to the limiting language," and that the amendment to that language, contained in an endorsement buried deep within the policy, also was not conspicuous. See Haynes, 32 Cal. 4th at 1205-1211. Here, by contrast, the penal law exclusion is located in the "Coverages" section of the policy, precisely where an insured would expect to find any exclusions from coverage.

Likewise, Gray v. Zurich Ins. Co., 65 Cal. 2d 263 (1966) is distinguishable. There, the California Supreme Court held that an exclusion for bodily injury caused intentionally by the insured was not conspicuous because "it appear[ed] only after a long and complicated page of fine print, and [was] itself in fine print." See id. at 273. Here, by contrast, the exclusions appear in the section describing the coverage of the policy and are in the same type size as the other coverage provisions.

Finally, in Thompson v. Mercury Casualty Co., 84 Cal. App. 4th 90 (2000), the California Court of Appeal held that a limitation on liability for "permissive users" of the insured's automobile was inconspicuous because it did not appear in the "Liability" section of the policy, "where an average layperson would expect to find it." See id. at 97. Here, by contrast, the penal law exclusion is included in the "Coverages" section of the policy.

Moreover, as Nationwide points out, the California Supreme Court, when presented with an exclusionary clause located and printed in a manner more closely resembling the

clause at issue herein, has found such exclusion to be conspicuous.  In particular, in National Insurance Underwriters v. Carter, 17 Cal. 3d 380 (1976), the Supreme Court considered an argument that an exclusion in an aircraft liability insurance policy, barring coverage for operation by an unqualified pilot, was not conspicuous.  See id. at 384.  The Supreme Court rejected the argument because the exclusion appeared in a section titled "Exclusions" on the page immediately following the definition of the insured, and was "in printing of size and intensity identical to that of the rest of the policy save only for paragraph headings."  See id.[4]  The Supreme Court held: "Although we have invalidated an exclusionary clause where it is hidden in a subsequent section of the policy bearing no clear relationship to the insuring clause, or concealed in a mass of fine print, the pilot exclusion clause in the present policy suffers from neither defect and as a matter of law is conspicuous[.]"  See id.

Accordingly, the Court finds the penal law exclusion is conspicuous.

**2.  "Plain and Clear"**

Defendants further argue that the penal law exclusion is not "plain and clear," as required by California Supreme Court case law.  It is not enough that exclusionary language is placed conspicuously in the policy; "[t]he language itself must be plain and clear."  See Haynes, 32 Cal. 4th at 1211 (internal quotation and citation omitted).   Put another way, an exclusion "must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson."  See id. at 1204.  Thus, in determining whether a term is plain and clear, a court "must attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language."  See MacKinnon v. Truck Ins. Exchange, 31 Cal. 4th 635, 649 (2003).

---

[4] Although the pilot exclusion appeared in two places in the policy there at issue, the Supreme Court's decision was not dependent on the fact of repetition.  Rather, the Supreme Court found each such provision "conspicuous."  See id. at 385 ("The pilot exclusion clause . . . as a matter of law is conspicuous, both in the exclusion clause and in the 'Declarations.'").

8

Here, defendants first argue that the penal law exclusion is not plain and clear because the phrase "violation of a penal law" contained therein is not part of the working vocabulary of the average layperson. The Court disagrees. The average layperson reading the phrase "violation of a penal law" would interpret it to mean a criminal act or crime. A "penal institution," for example, is commonly understood to refer to a place of incarceration for persons who have been convicted of crimes. Similarly, a dictionary in common usage defines "penal code" as "[t]he body of laws relating to crimes and offenses and the penalties for their commission." See The American Heritage Dictionary of the English Language, 4th ed., available at http://www.dictionary.com.[5] Indeed, the one reported decision to have addressed the language here at issue has found "'penal law' is synonymous with 'criminal law.'" See American Family Mutual Ins. Co. v. Hadley, 648 N.W.2d 769, 781 (Neb. 2002). Moreover, as Nationwide notes, California courts routinely have found exclusions for "criminal" activity to be unambiguous and enforceable. See 20th Century Ins. Co. v. Schurtz, 92 Cal. App. 4th 1188, 1189, 1195-96 (2002) (finding exclusion for "bodily injury . . . which is a foreseeable result of [a] . . . criminal act" enforceable); Century-National Ins. Co. v. Glenn, 86 Cal. App. 4th 1392, 1397 (2001) (same); 20th Century Ins. Co. v. Stewart, 63 Cal. App. 4th at 1336 (same); see also Safeco Ins. Co. of America v. Robert S., 26 Cal. 4th 758, 763-64 (2001) (noting exclusions for "criminal acts" are common and valid).[6] Accordingly, the Court finds the penal law exclusion unambiguously excludes coverage for criminal acts.

Defendants next argue that an average layperson is unlikely to understand the penal law exclusion "to exclude coverage for an accident caused by a common violation of the Vehicle Code," citing, inter alia, such examples as making an unsafe lane change and making an illegal left turn, both of which are classified as infractions in the California

---

[5] The Court recognizes that a dictionary definition does not necessarily establish the average layperson's understanding of a term. See MacKinnon, 31 Cal. 4th at 649.

[6] In Safeco v. Robert S., the California Supreme Court found invalid an exclusion for "illegal acts." See id. No such provision exists in the instant policy.

9

1 Vehicle Code.[7]  (See Raphaels' motion at 10, 13-14.)  No such violation is at issue in the
2 instant case, however, and none of the parties contends that coverage for common traffic
3 infractions is excluded.  Here, as noted, Holton pleaded guilty to two felonies, specifically,
4 two counts of violating California Penal Code § 192(c)(3), vehicular manslaughter while
5 intoxicated.  (See Nationwide's Request for Judicial Notice Exs. D and E.)  Both offenses
6 clearly meet the average layperson's understanding of a crime.[8]  Consequently, given the
7 penal law exclusion, the average layperson could not reasonably expect coverage under
8 the Nationwide umbrella policy for injuries resulting from conduct of such nature.

9       Defendants next argue that because California law precludes primary automobile
10 insurance policies from excluding coverage for driving under the influence, see Cal. Ins.
11 Code § 11580.1; see also Hertz Corp. v. Home Ins. Co., 14 Cal. App. 4th 1071, 1078
12 (1993), a reasonable insured would expect that an excess or umbrella policy would provide
13 similar coverage.  The issue at hand, however, is not whether a reasonable insured would,
14 in the abstract, expect an excess or umbrella policy to provide coverage for injuries
15 resulting from driving under the influence, but, rather, whether a reasonable insured would
16 understand the penal law exclusion in the instant umbrella policy to bar such coverage.[9]  As
17 noted, even where an exclusion "takes away or limits coverage reasonably expected by an
18 insured," such exclusion is enforceable if it is "conspicuous, plain and clear."  See Haynes,
19 32 Cal. 4th at 1204.

20       Lastly, defendants argue that an average layperson would understand the penal law
21 exclusion to "exclude coverage only if an accident occurs when a vehicle is consciously

---

[7] California law defines "crimes and public offenses" to include felonies, misdemeanors, and infractions.  See Cal. Pen. Code § 16.

[8] In determining whether an exclusion is plain and clear, the court considers its language "in the context of the facts of the case and not in the abstract."  See 20th Century Ins. Co. v. Stewart, 63 Cal. App. 4th at 1338; see also MacKinnon, 31 Cal. 4th at 653-54 (interpreting exclusion to extent necessary "to resolve the present case"; noting "further clarification may be required" in the future).

[9] The Court further notes that the same statute by which primary policies are restricted expressly exempts excess policies from such restrictions.  See id.

being used in connection with a criminal enterprise – such as, for example, when it is being used to smuggle drugs or used as a 'getaway' car." (See Raphaels' motion at 14.)  This argument is not persuasive.  Nothing in the penal law exclusion limits its coverage to crimes committed with a particular state of mind.  Moreover, the language of the penal law exclusion, as noted, is synonymous with an exclusion for criminal acts, and the California Court of Appeal has held that criminal acts need not be intentional to fall within the scope of the "criminal acts" exclusion.  See 20th Century Ins. Co. v. Schurtz, 92 Cal. App. 4th at 1196-97 (noting exclusion "applies regardless of intent" (emphasis in original)).

For the reasons set forth above, the penal law exclusion is conspicuous, plain, and clear, and is therefore enforceable.  See Haynes, 32 Cal. 4th at 1204.  Consequently, the penal law exclusion bars any claim under the Nationwide umbrella policy arising out of the events relevant to the instant action.

### B. Other Issues

As a result of the above ruling, the Court does not reach the parties' arguments as to the location of Holton's primary residence, and whether the Nationwide umbrella policy should be reformed to exclude coverage for Holton.

### CONCLUSION

For the reasons set forth above,

1. Nationwide's motion for summary judgment is hereby GRANTED.

2. The Raphaels' motion for summary judgment is hereby DENIED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 27, 2006

MAXINE M. CHESNEY
United States District Judge